1

**Daniel J. Weintraub - Bar #132111**
**James R. Selth – Bar #123420**

2

**WEINTRAUB & SELTH, APC**

3

**11766 Wilshire Boulevard, Suite 1170**
**Los Angeles, CA 90025**

4

**Telephone: (310) 207-1494**
**Facsimile: (310) 442-0660**

5

6

Attorneys for Chapter 11 Debtor
and Plan Proponent

7

8

### UNITED STATES BANKRUPTCY COURT

9

### CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO DIVISION

10

11

In re:

12

RANCHO MALIBU, LLC,

13

Debtor and Debtor in Possession.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| In re: | ) Case No. 1:10-bk-18138-GM |
| | ) |
| RANCHO MALIBU, LLC, | ) Chapter 11 Case |
| | ) |
| Debtor and Debtor in Possession. | ) **DISCLOSURE STATEMENT** |
| | ) **DESCRIBING  LIQUIDATING** |
| | ) **CHAPTER 11 PLAN OF** |
| | ) **REORGANIZATION OF RANCHO** |
| | ) **MALIBU, LLC** |
| | ) |
| | ) **Disclosure Statement Hearing:** |
| | ) Date:   May 10, 2011 |
| | ) Time:   10:00 a.m. |
| | ) Place:   Courtroom 303 |
| | )          21041 Burbank Blvd. |
| | )          Woodland Hills, CA |
| | ) |
| | ) **Plan Confirmation Hearing:** |
| | ) Date:   To Be Set |
| | ) Time:   To Be Set |
| | ) Place:   Courtroom 303 |
| | )          21041 Burbank Blvd. |
| | )          Woodland Hills, CA |

1

# <u>TABLE OF CONTENTS</u>

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION ................................................................. | | 2 |
| | A. | Purpose of This Document ........................................... | 4 |
| | B. | Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ... | 5 |
| | | 1. Time and Place of the Confirmation Hearing .......................... | 5 |
| | | 2. Deadline For Voting For or Against the Plan ......................... | 5 |
| | | 3. Deadline For Objecting to the Confirmation of the Plan .............. | 5 |
| | | 4. Identity of Person to Contact for More Information Regarding the Plan ............................................................... | 6 |
| | C. | Disclaimer ......................................................... | 6 |
| II. | BACKGROUND ................................................................. | | 6 |
| | A. | What follows is a Brief Summary of the Dates and Circumstances That Led the Debtor to File the Case.......................................... | 6 |
| | | 1. The Debtor's .... ............................................... | 6 |
| | | 2. The Debtor's Pre-Petition Financial Structure...................... | 7 |
| | | 3. Events Precipitating the Bankruptcy and Amendment to Debtor's Operating Agreement................................................. | 7 |
| | | 4. The EWB Secured Loan............................................. | 9 |
| | | 5. The Manhattan Litigation Against EWB................................ | 9 |
| | | 6. The Debtor's Claim Against EWB...................................... | 10 |
| | B. | Events Occurring After Bankruptcy Filing ............................... | 10 |
| | | 1. Employment of Professionals........................................ | 10 |
| | | 2. Valuation of Property.............................................. | 10 |
| | | 3. Equitable Subordination Claims..................................... | 11 |
| | | 4. Court Approved Global Settlement Agreement.......................... | 11 |
| III. | SUMMARY OF THE PLAN .................................................... | | 13 |
| IV. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.................................................................... | | 15 |
| | A. | What Creditors and Interest Holders Will Receive Under The Plan .......... | 15 |
| | B. | Unclassified Claims ................................................. | 15 |
| | | 1. Administrative Expenses ........................................... | 15 |
| | | 2. Priority Tax Claims ............................................... | 16 |
| | C. | Classified Claims and Interests ..................................... | 17 |
| | | 1. Class of Secured Claims ........................................... | 17 |
| | | 2. Classes of Priority Unsecured Claims ............................... | 17 |
| | | 3. Class of General Unsecured Claims ................................. | 17 |
| | | 4. Class of Interest Holders ......................................... | 18 |
| | D. | Means of Effectuating the Plan ...................................... | 19 |
| | | 1. Funding for the Plan and Post Confirmation Management............... | 19 |
| | | 2. Disbursing Agent ................................................. | 19 |
| | | 3. Objections to Claims .............................................. | 19 |
| | | 4. Interest Pending Allowance of Claims .............................. | 19 |
| | | 5. Distributions to be Made Pursuant to the Plan ..................... | 20 |
| | | 6. Exculpations and Releases ......................................... | 21 |
| | | 7. Injunctions ...................................................... | 22 |

i

E.   Risk Factors ............................................................... 22
F.   Other Provisions of the Plan ...................................... 23
    1.   Executory Contracts and Unexpired Leases ........................ 23
        a)   Assumptions ................................................ 23
           (i)   Schedule of Assumed Agreements ................... 23
           (ii)   Cure Payments .......................................... 23
           (iii)   Objections to Assumption or Proposed Cure
                Payments ................................................. 23
        b)   Rejections ................................................. 24
    2.   Retention of Jurisdiction ..................................... 24
G.   Reservation of Claims and Causes of Action, Including Avoidance Actions   26
H.   Tax Consequences of Plan .......................................... 26
V.   CONFIRMATION REQUIREMENTS AND PROCEDURES ...................... 27
A.   Who May Vote or Object ............................................ 28
    1.   Who May Object to Confirmation of the Plan ....................... 28
    2.   Who May Vote to Accept/Reject the Plan ........................... 28
        a)   What Is an Allowed Claim/Interest ........................... 28
        b)   What Is an Impaired Claim/Interest .......................... 29
    3.   Who is Not Entitled to Vote ................................... 29
    4.   Who Can Vote in More Than One Class ............................. 30
    5.   Votes Necessary to Confirm the Plan ............................. 30
    6.   Votes Necessary for a Class to Accept the Plan .................. 30
    7.   Treatment of Nonaccepting Classes ............................... 30
    8.   Request for Confirmation Despite Nonacceptance by Impair
        Class(es) ................................................ 30
B.   Liquidation Analysis ............................................... 30
C.   Feasibility ........................................................ 32
VI.   EFFECT OF CONFIRMATION OF PLAN .................................... 33
A.   Discharge .......................................................... 33
B.   Revesting of Property in the Reorganized Debtor ................... 33
C.   Modification of Plan ............................................... 33
D.   Post-Confirmation Status Report .................................... 33
E.   Quarterly Fees ..................................................... 34
F.   Post-Confirmation Conversion/Dismissal ............................ 34
G.   Final Decree ....................................................... 34
H.   Conclusion ......................................................... 35
DECLARATION OF RICHARD WEINTRAUB ........ ............................... 36

## I. INTRODUCTION

Rancho Malibu, LLC, a California limited liability company, is the debtor and debtor-in-possession (the "Debtor"), in the above-captioned chapter 11 bankruptcy case (the "Case"). On July 6, 2010 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtor, the creditors and other parties in interest to propose a plan of reorganization. A plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Chapter Liquidating 11 Plan of Reorganization (the "Plan") sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT ("Disclosure Statement") FOR THE PLAN.

This is a liquidating Plan. Under the Plan, the Debtor will distribute the $125,000.00 in cash proceeds which it received from the global settlement (the "RM Settlement"), reached with its former secured creditor, East West Bank ("EWB"), and approved by the Court by the Order entered on December 16, 2010 (**Docket No. 78**). The Plan also provides that in exchange for the agreement of REB Malibu, LLC ("REB"), and Manhattan Partners, LLC ("Manhattan"), to not assert (a) administrative priority claims for the amounts advanced to fund the costs of administering the Debtor's Chapter 11 case, including without limitation attorneys' fees and costs of the Debtor's counsel, which totaled more than $160,000.00[1], or (b) general unsecured claims which total in excess of $2,600,000.00, the Debtor shall assign and transfer to REB and Manhattan Partners, LLC ("Manhattan"), the Debtor's two members, all of the Debtor's right, title and interest in, to and arising out of all assets of every kind relating directly or indirectly to

---

[1] Declarations of Richard Weintraub and Hushmand Sohaili evidencing the alleged administrative claims

2

the development or land use entitlements (if any) related to the Property formerly owned by the

Debtor, (see discussion at page 13, lines 23 through page 14, line 17 of this Disclosure

Statement). The Property was foreclosed on by EWB in accordance with the terms of the RM

Settlement. As explained more fully herein, if the member claims are allowed and not waived,

the Case will be administratively insolvent and the general unsecured creditors will not receive a

distribution.

The Plan provides an extremely prompt and cost effective means for distributing the

$125,000.00 settlement proceeds. Under the Plan, creditors will receive their distributions

within forty five (45) days following the Effective Date of the Plan ("Effective Date"). The

alternative to the Plan is conversion of the case to Chapter 7. Conversion will result in

significant delay in the making the creditor distributions (perhaps a year or more) and increased

administrative fees (the Chapter 7 trustee's fee alone is approximately ($10,000.00, plus the fees

and expenses of the trustee's counsel and other professionals-estimated at $15,000.00), which

would diminish the return to unsecured creditors. In addition, in a Chapter 7, the Debtor's

members would not waive their claims, which would likely completely eliminate distribution to

the unsecured creditors.

The "Effective Date" is the first business day which is at least fifteen (15) days following

the date of entry of the Bankruptcy Court order confirming the Plan ("Plan Confirmation

Order"), providing there has been no order entered staying the effectiveness of the Plan

Confirmation Order. If there has been an order entered staying the effectiveness of the Plan

Confirmation Order, the Effective Date will be on the first business day after the stay is no

---

of REB and Manhattan shall be filed prior to the Plan confirmation hearing.

3

1  longer in effect with respect to the Plan Confirmation Order.  Following the Effective Date, the

2  Debtor will be referred to herein as the Reorganized Debtor.

3  **A.    Purpose of This Document**

4  This Disclosure Statement summarizes what is in the Plan, and includes information

5  relating to the Plan and the Plan Confirmation process.

6

7  **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

8  **KNOW ABOUT:**

9  **(1)    WHO CAN VOTE OR OBJECT,**

10  **(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim**

11  **will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO**

12  **WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

13  **(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**

14  **DURING THE DEBTOR'S BANKRUPTCY CASE,**

15

16  **(4)    WHAT ISSUES THE COURT WILL CONSIDER WHEN DECIDING**

17  **WHETHER OR NOT TO CONFIRM THE PLAN,**

18  **(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

19  **(6)    WHETHER THE PLAN IS FEASIBLE.**

20  This Disclosure Statement cannot tell you everything about your rights.  You should

21  consider consulting your own lawyer to obtain more specific advice on how the Plan will affect

22  you and what is the best course of action for you.

23

24  Be sure to read the Plan as well as this Disclosure Statement.  If there are any

25  inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

26  The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"

27  concerning the Plan.  The United States Bankruptcy Court for the Central District of California

28

4

1    (the "Court") has approved this document as an adequate Disclosure Statement, containing

2    enough information to enable parties affected by the Plan to make an informed judgment about

3    the Plan.

4    **B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

5    
6    THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

7    DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

8    YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE

9    PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

10   CREDITORS AND INTEREST HOLDERS IN THIS CASE.

11   **1.    Time and Place of the Confirmation Hearing**

12   The hearing where the Court will determine whether or not to confirm the Plan will take

13   place on _____, 2011 at __:_0_.m. in Courtroom 303, located at 21041 Burbank
14   
15   Blvd., Woodland Hills, California 91041.

16   **2.    Deadline For Voting For or Against the Plan**

17   If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

18   and return the ballot in the enclosed envelope to Daniel Weintraub, Esq., of Weintraub & Selth,

19   APC, 11766 Wilshire Blvd., Suite 1170, Los Angeles, CA 90025. Your ballot must be received

20   by 5:00 p.m. PST, on _____, 2011, or it will not be counted.
21   
22   **3.    Deadline For Objecting to the Confirmation of the Plan**

23   Objections to the confirmation of the Plan must be filed with the Court and served upon

24   counsel for the Debtor at Weintraub & Selth, APC, 11766 Wilshire Blvd., Suite 1170, Los

25   Angeles, CA 90025 by _____, 2011.

26

27

28

**4.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Daniel

Weintraub, Esq., of Weintraub & Selth, APC, 11766 Wilshire Blvd., Suite 1170, Los Angeles,

California 90025, Telephone: (310) 207-1494.

**C.    Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and

records which, unless otherwise indicated, are unaudited.    The information contained in this

Disclosure Statement is provided solely by the Debtor.    The Debtor represents that everything

stated in this Disclosure Statement is true and correct to the Debtor's best knowledge.    The Court

has not yet determined whether or not the Plan is confirmable and makes no recommendation as

to whether or not you should support or oppose the Plan.


## II. BACKGROUND


**A.    What Follows is a Brief Summary of the Dates and Circumstances that Led the
Debtor to File the Case.**

**1.    The Debtor**

The Debtor previously owned a 28 acre parcel of unimproved real property in Malibu,

California (the "Property"), upon which it planned to develop a luxury hotel resort and spa (the

"Project").    The Debtor acquired the Property in January 2002, from Richard Weintraub, one of

the managers of the Debtor. After acquiring the Property, the Debtor began the process of

planning and designing a luxury hotel to be constructed on the Property and obtaining the

entitlements necessary to make the Property "shovel ready".    The Debtor retained the services of

various design professionals, including architects, designers, engineers and lawyers to develop

1   drawings, prepare reports and draft contracts and agreements, among other things, in an effort to

2   seek to obtain the permits, entitlements and other general intangibles necessary to commence the

3   construction of the Project.  The contracts of the design professionals state that any drawings and

4   other work product created by the design professionals are the exclusive property of the design

5   professionals and these professionals contend that the Debtor has no interest in such work

6   product.[2]  The intangibles referred to above were in various states of completion as of the

7   Chapter 11 case filing and the RM Settlement and many are now obsolete.  The Debtor is

8   uncertain of the value of such intangibles.

9

10          **2.  The Debtor's Pre-Petition Financial Structure**

11          The Debtor is a California limited liability company that as of the Petition Date was

12   owned by three members — REB- an affiliate of Richard Weintraub, Manhattan  and Dimes,

13   LLC (an affiliate of Ezri Namvar)("Dimes").   Dimes is a debtor in the involuntary bankruptcy

14   case pending in the Court, Case No. 2:09-bk-25517-BR, in which an order for relief was entered

15   and the case was converted from a Chapter 7 case to one under Chapter 11 on July 2, 2010.  As

16   of the Petition Date, Mr. Weintraub was the co-manager of the Debtor along with a

17   representative of Dimes, Lou Cicalese.

18          Due to Dimes' inability to fund its obligations to the Debtor (as discussed more fully

19   below), Dimes lost its standing as a voting member of the Debtor, but retained its economic

20   interest (46%), subject to the terms of the Amendment to the Debtor's Operating Agreement

21   described  immediately below.  As a result of the RM Settlement described in Section I.B.4

22   below, Dimes gave up its entire interest in the Debtor.

23          **3.  Events Precipitating the Bankruptcy and the Amendment to the Debtor's**

24              **Operating Agreement**

25

26   _____

27   [2] The design professional contracts and the project drawings, reports, agreements, permits, entitlements and
other intangibles are extremely voluminous and are not attached hereto in the interest of avoiding unnecessary cost
and preventing waste.  Copies of the design professional contracts shall be lodged with the Court prior to the hearing

28

1    Pursuant to the Debtor's Operating Agreement, Dimes was responsible for funding the

2    development and other costs of the Property.  It is estimated that Dimes failed to meets its

3    funding obligations to provide several million dollars to meet its obligations under the Operating

4    Agreement.  As a result, certain of the Debtor's members made claims against Dimes in

5    connection with Dimes' failure to fund its obligations, among other matters.  Thereafter, the

6    Debtor's management consisting of the owner of Dimes, Ezri Namvar and the owner of REB ,

7    Richard Weintraub deadlocked and its operations came to a halt.

8

9    In order to preserve and protect the Property and to resolve various disputes with Dimes,

10    the members of Rancho Malibu entered into an Amendment to Operating Agreement as of July,

11    2010 ("Amendment"), a copy of which is attached hereto as **Exhibit 1**.  The Amendment

12    provides generally:

13        a.   That the Debtor may file the Case, provided the costs of the Case would be

14            funded by REB and Manhattan who could seek an administrative claim for the

15            advance of such costs;

16        b.   The control of the Debtor's reorganization would be vested in Mr. Weintraub,

17            REB and Manhattan, unless they failed to pay Dimes $500,000 in exchange

18            for Dimes' surrender of its interests in the Debtor or propose a plan which

19            provides for such payment, within the deadlines set forth in the Amendment;

20        c.   In the event, Mr. Weintraub, REB and Manhattan did not make the $500,000

21            payment to Dimes or propose a plan which provides for such payment, Dimes

22            would be given the exclusive authority to pursue the sale of the Property,

23            subject to Bankruptcy Court approval; and

24

25

26

---

27    on the Disclosure Statement.  Other documents will be available upon written request to Debtor's counsel.

28

8

d.   The members of the Debtor would exchange releases.

The Amendment was approved by the Court in the Dimes' chapter 11 case by order entered on August 4, 2010 with no objection. The Amendment was superseded by the Dimes Release described below in Section I.B.4. The primary benefit to this estate under the Dimes Release was Dimes' withdrawal of its proof of claim against the Debtor in the amount of $500,000.00.

**4.   The EWB Secured Loan**

On or about December 1, 2006, the Debtor entered into a Business Loan Agreement with EWB pursuant to which EWB loaned the Debtor $12.1 million (the "EWB Loan"). On or about May 5, 2007, the amount of the EWB Loan was increased to $21.5 million. The EWB Loan was evidenced by a promissory note ("EWB Note") and was secured by a first priority deed of trust ("EWB Deed of Trust"), encumbering the Property dated December 1, 2006.

As a result of Dimes' breach of its funding obligations to the Debtor, the Debtor was eventually unable to pay all of its debts as they came due. On March 5, 2010, EWB recorded its Notice of Default. On June 9, 2010, EWB published its Notice of Trustee's Sale scheduling a foreclosure sale for July 7, 2010. This Chapter 11 bankruptcy case was filed July 6, 2010 and the foreclosure sale was automatically stayed.

**5.   The Manhattan Litigation Against EWB**

On December 23, 2009, Manhattan filed a lawsuit in the Los Angeles Superior Court against EWB and Mr. Weintraub alleging, among other things, that EWB assisted Mr. Weintraub in a scheme to dilute Manhattan's membership interest or otherwise cause harm to Manhattan's interest in the Debtor to Mr. Weintraub's benefit (the "Manhattan Lawsuit"). Manhattan further alleged that EWB's conspiracy with Mr. Weintraub enabled and caused Mr. Weintraub to turn down an offer to purchase the Property which would have paid creditors in full and provide a

9

1  substantial dividend to the Debtor's members.  Both EWB and Mr. Weintraub disputed these

2  allegations.

3  **6.  The Debtor's Claim Against EWB**

4  Consistent with the Manhattan Lawsuit, after this Case was filed, through detailed

5  correspondence, the Debtor notified EWB that Debtor alleged that EWB had damaged the

6  Debtor by EWB's wrongful conduct, which if proven before the Bankruptcy Court, could result

7  in the subordination of EWB's claims to those of allowed unsecured creditors.  EWB of course

8  disputed these allegations.  Due to the projected costs and risks associated with litigating the

9  EWB claims and the Debtor's lack of the funds necessary to support litigation of this magnitude,

10  the Debtor elected to settle with EWB and entered into the RM Settlement, which the Court

11  approved on notice to all creditors and authorized EWB to complete its foreclosure on the

12  Property.  A copy of the Court's *Order Granting Motion to Approve Compromise and Settlement*

13  *Agreement with East West Bank and Mutual General Release Agreement Between Debtor and*

14  *Dimes, LLC,* entered on December 16, 2010 (the "Settlement Order") is attached hereto as

15  **Exhibit 5** and incorporated by this reference.    The RM Settlement resolved the Debtor's claims

16  against EWB and resulted in $125,000.00 in cash for creditors.

17  

18  

19  

20  **B.  Events Occurring After Bankruptcy Filing.**

21  **1.  Employment of Professionals**

22  At the inception of the Case, Debtor retained Weintraub & Selth, APC ("WS"), to serve

23  as general bankruptcy counsel.  On August 27, 2010, the Court entered an order authorizing the

24  Debtor to employ WS as its general bankruptcy counsel to assist in the administration of the

25  Case and reorganization of the Debtor's business affairs.

26  **2.  Valuation of the Property**

27  

28

EWB obtained an appraisal of the Property which EWB filed in support of the Motion for

Relief from the Automatic Stay.  EWB alleged that the Property had a fair market value of

$17,800,000.00 as of August 13, 2010.

The Debtor disagreed with EWB's valuation.  Given the status of the entitlements to the

Property and the difficulty and cost in finding financing to develop raw, unentitled land, the

Debtor valued the Property at $7,000,000.00.  Under either valuation, there was no equity in the

Property for the Chapter 11 estate or its creditors as EWB was owed in excess of $22,000,000.

### 3.    Equitable Subordination Claims

As mentioned above, after filing the Case, the Debtor notified EWB of its claims against

EWB and that it would seek the remedy of equitable subordination of EWB's claim, the transfer

of EWB's lien to the estate and/or the complete disallowance of EWB's claim.  The Debtor

asserted that EWB wrongfully interfered with a sale of the Debtor's real property at various

points in time and any such sale would have paid EWB and all other creditors in full in cash in

2008 or in 2009.  These claims were resolved by way of the Court approved RM Settlement,

which is described below in Section I.B.4.

### 4.    Court Approved Global Settlement Agreement

The Debtor, its members and EWB expended significant time and effort negotiating a

global settlement of the claims amongst them.  These discussions culminated in a global

settlement whereby the Debtor and EWB entered into a settlement agreement (the "RM

Settlement Agreement") and the Dimes Release described below.

The RM Settlement Agreement principally provides that upon the RM Settlement

Agreement becoming effective, Debtor would release claims against EWB and its officers,

employees, etc., EWB would pay the Debtor the sum of $125,000.00 and Debtor would stipulate

to relief from stay in favor of EWB.  Thereafter, upon EWB completing its foreclosure sale on

1    the Property, EWB would release the Debtor and its members and affiliates from any claims

2    related to the EWB Loan.  The RM Settlement Agreement became effective on December 16,

3    2010 and the EWB foreclosure sale took place on December 20, 2010.

4         The Debtor also entered into a Mutual General Release Agreement with Dimes (the

5    "Dimes Release") that resolved all disputes among the parties, including the elimination of a

6    $500,000.00 claim filed against Debtor.

7

8         The settlement among the Debtor, EWB, Dimes, Manhattan, REB, Weintraub and Sohaili

9    (collectively, "Settling Parties"), were evidenced by the following agreements, all of which were

10   attached as exhibits to the Debtor's *Motion to Approve Compromise and Settlement Agreement*

11   *with East West Bank and Mutual General Release Agreement with Dimes, LLC* (the "Settlement

12   Motion") (**Docket 65-67[3]**), which was approved by the Court pursuant to the Settlement Order:

13
        a.    Settlement Agreement (between Rancho Malibu, LLC and East West Bank);
14
        b.    Option Agreement (between East West Bank, Hushmand Sohaili, Manhattan
15
              Partners, LLC, Richard E. Weintraub, REB Malibu, LLC and Green Acres, LLC);
16
        c.    Mutual General Release Agreement (between Rancho Malibu, LLC, and Dimes,
17
              LLC);
18
        d.    Settlement Agreement (between East West Bank, Dimes, LLC, REB Malibu,
19
20            LLC, Richard Weintraub, Manhattan Partners, LLC and Hushmand Sohaili);

21      e.    Mutual Release Agreement (between Dimes, LLC, REB Malibu, LLC, Richard
22
              Weintraub, Manhattan Partners, LLC, and Hushmand Sohaili); and
23
        f.    Mutual Release Agreement (between Dimes, LLC and East West Bank).
24

25

26
        _____
27      [3] Copies of the Settlement Motions and the exhibits thereto shall be provided to any creditor upon written request to counsel of
        the Debtor, but are not attached hereto in the interest of reducing expense and waste.
28

1  This multi-party compromise provided a structure for the settlements of multiple disputes

2  amongst the Debtor and non-debtor parties. The RM Settlement Agreement and Dimes Release

3  were critical components of the multi-party compromise and benefitted the estate and its

4  creditors by avoiding risk, generating cash and reducing administrative claims. The Debtor's

5
6  counsel is currently holding the $125,000.00 paid by EWB in trust to distribute pursuant to the

7  Plan.

8  ### III.

9  ### SUMMARY OF THE PLAN

10  The Debtor's counsel is currently holding the $125,000.00 of EWB settlement proceeds

11  (plus $24,761.81, which remains from a post-petition retainer paid by the Members), to

12  distribute under the Plan. If the unsecured creditors do not vote in favor of the Plan, this case

13  will be converted to one under Chapter 7 which will result in increased claims that REB and

14  Manhattan (collectively, the "Members"), will assert against the Debtor, including Chapter 11

15
16  administrative claims totaling in excess of $160,000.00, and general unsecured claims of

17  approximately $2,600,000.00. If the Members' administrative claims are allowed, these claims

18  will eliminate any distribution to unsecured creditors. If the administrative claims of the

19  Members are not allowed but the general unsecured claims are allowed, the distribution to

20  general unsecured creditors will be reduced by fifty percent (50%) or more. In addition,

21  conversion to Chapter 7 would result in additional administrative costs to the estate for a

22  Chapter 7 Trustee and his or her professionals and a delay in any distribution of the estate's

23  cash.

24
25  Under the Plan, on the Effective Date, the Debtor will, in exchange for the agreement

26  of the Members, not assert (a) an administrative priority claim for the amounts advanced to

27  fund the costs of administering the Debtor's Chapter 11 case, including without limitation

28

13

1    attorneys' fees and costs of the Debtor's counsel, which totaled more than $160,000.00, or (b)

2    general unsecured claims which total in excess of $2,600,000.00, assign and transfer to REB

3    and Manhattan all of the Debtor's right, title and interest in, to and arising out of all assets of

4    every kind relating directly or indirectly to the development or land use entitlements (if any)

5    related to the Property including, but not limited to, all permits, licenses, rights of way, studies,

6    reports, plans, maps, specifications, surveys, warranties, guaranties, agreements, air rights, off-

7    site parking rights, approvals, utility rights, development rights and similar rights related to the

8

9    Property, whether granted by governmental or quasi-governmental authorities or private

10    persons (collectively herein, the "Intangible Assigned Assets"); provided, however, that

11    Intangible Assigned Assets shall not include any executory contracts within the meaning of

12    Bankruptcy Code § 365, and the Debtor does not assume or assign and REB and Manhattan do

13    not assume any such executory contracts; provided further that any rights or assets acquired by

14    the Debtor under any such executory contract before that contract was rejected shall constitute

15    Intangible Assigned Assets.   The Members will not and do not assume any liabilities

16    associated with the Intangible Assigned Assets. The design professionals have taken the

17    position that the plans, drawings and the like are not the property of the Debtor, while the

18    entitlements and permits appear to run with the Property. The Debtor does not believe it has

19    any interest in such items and believes it is in the best interests of the remaining creditors to

20    accept the Plan with this provision. The Members claims could eliminate any recovery for

21    creditors under the Plan. The agreement by such parties not to assert such claims allows the

22

23    unsecured claimants a distribution of approximately 4.4% under the Plan.

24

25    //

26    //

27

28

14

## IV.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND INTERESTS UNDER THE PLAN

**A.     What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various

classes according to their right to priority. The Plan states whether each class of claims or

interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B.     Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.

They are not considered impaired and they do not vote on the Plan because they are

automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such,

the Debtor has not placed the following claims in a class:

**1.     Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Case that

are allowed under Bankruptcy Code Section 507(a)(1). The Bankruptcy Code requires that all

administrative claims be paid on the Effective Date unless a particular claimant agrees to a

different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their

treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Weintraub & Selth, APC, Debtor's bankruptcy counsel ("WS") | $25,000.00 (estimated) | Paid in full from cash on hand upon the later of (a) the Plan's Effective Date, or (b) the entry of a Bankruptcy Court order allowing the fees. |
| Office of the U.S. Trustee Fees | $    650.00 (estimated) | Paid in full upon Effective Date. |
| REB Malibu, LLC | $80,000.00 | Such claim shall not be asserted under the Plan in consideration for the transfer of all right, title and interest in the Intangible Assigned Assets on the Effective Date to REB and Manhattan |

| Manhattan Partners, LLC | $80,000.00 | Satisfied in full by Debtor's transfer of all right, title and interest in the Intangible Assigned Assets on the Effective Date to REB and Manhattan |
|---|---|---|
| **TOTAL** | $185,650.00 (estimated) | |

### Court Approval of Fees Required:

The Court must allow all fees listed in this chart before the fees can be paid, except for fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources. The professional in question must file and serve a properly noticed fee application, and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under the Plan. As discussed in this Disclosure Statement, the Debtor will have sufficient cash on hand on the Effective Date to satisfy the foregoing administrative claims.

The chart above includes the administrative claims of REB, Mr. Weintraub and Manhattan for reimbursement of their payments to administer this case ("Insider Administrative Claims"). If the Plan is confirmed, the Insider Administrative Claims will not be asserted in exchange for the assignment on the Effective Date of the Intangible Assigned Assets.

**2.    Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8). The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installments of cash over a period not exceeding five (5) years from the date of the order for relief.  There are no priority tax claims anticipated in this Chapter 11 case.

**C.    Classified Claims and Interests**

    **1.    Class of Secured Claims**

        Secured claims are claims secured by liens on property of the estate.   There are no secured claims in this Chapter 11 Case.

    **2.    Classes of Priority Unsecured Claims**

        Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.   However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.   The Debtor is not aware of any claims that would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

    **3.    Class of General Unsecured Claims**

        General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).    The following chart identifies the Plan's treatment of the classes containing all of the Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Claims: All General Unsecured Claims<br><br>Amount of all claims Total unsecured claims equal approximately $4,816,427.02,  however this figure includes the Released Insider Claims<br><br>Allowed Claims which will be paid under the Plan= $2,263,179.11 (reflects the higher of | N | Y<br><br>Allowed claims in this class are entitled to vote on the Plan | On or before the 45th day following the Effective Date, the Debtor will distribute to allowed Class 1 claim holders, on a pro rata basis, all funds remaining after payment of administrative costs.   The amount available for distribution is estimated to be approximately $100,000.00. |

17

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
|  | Schedule F undisputed claims and filed proofs of claim, less Released Insider Claims which are not paid provided the Plan is confirmed)  Total: $2,263,179.11 |  |  |  |

The total of unsecured claims against the estate is $4,816,427.02. However, the Member general unsecured claims total approximately $2,553,248.00. As stated above, the Member unsecured claims will not be asserted in exchange for the Debtor's transfer to Manhattan and REB of Intangible Assigned Assets. The Debtor believes that such interests either run with the Property or are of negligible value and therefore believes such an exchange is in the best interests of the Debtor's remaining creditors.

### 4.  Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 2 | All Equity Interests in Debtor –  REB Malibu, LLC ("REB") - 46%  Manhattan Partners, LLC ("Manhattan") -8%  Dimes, LLC ("Dimes") - 46% | Y | N  (Interests in this class are deemed to have rejected the Plan) | On the Effective Date, the Members' equity interests and all related rights and duties under the Debtor's Operating Agreement, as amended, shall be terminated. |

**D.    Means of Effectuating the Plan**

**1.    Funding for the Plan and Post Confirmation Management**

The Plan will be funded by the existing cash on hand of $14,9761.81, consisting of the reaminder of WS' post filing retainer plus the $125,000.00 of EWB settlement proceeds. The Debtor will be managed following Plan confirmation by REB and Manhattan equally. REB and Manhattan's right to manage post confirmation shall be for the sole purpose of winding down and dissolving the Debtor as appropriate or necessary in the sole and absolute discretion of REB and Manhattan, including pursuing any re-vested causes of action.

**2.    Disbursing Agent**

In the interest of eliminating expense to the estate, WS, the Debtor's counsel, shall serve as the Plan Disbursing Agent ("Disbursing Agent") under the Plan and make Plan disbursements pursuant to the calculations of the pro rata share for each general unsecured claimant made by Debtor's management. The cost of this service is estimated to be $2,000.

**3.    Objections to Claims**

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims. The Debtor has reviewed the filed claims and compared them to its records. The Debtor does not intend to file any objections to claims. Attached as **Exhibit 2** hereto is a claims chart, which identifies all of the Debtor's scheduled unsecured claims and proofs of claim which have been filed[4] against the Debtor by these creditors[5]. As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. The Court will retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to claims following the confirmation of the Plan.

---

[4] All filed claims are subject to objections by Debtor as set forth herein.

Nothing contained in the Plan will constitute a waiver or release by the Debtor of any

rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The

Disbursing Agent will withhold from property to be distributed under the Plan and will place in

reserve a sufficient amount of cash to be distributed on account of claims that are disputed and

have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any

particular class as if such claims were allowed in full.

### 4.    Interest Pending Allowance of Claims

Except as specifically provided for in the Plan, in the order confirming the Plan, or in

some other order of the Court, interest will not accrue on claims and no holder of a claim will be

entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any

claim, nothing in the Plan or herein will be deemed to imply or create for the holders of any

Disputed Claims any entitlement to receive interest upon the allowed amount of any such

Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as

expressly stated in the treatment pursuant to the Plan.

### 5.    Distributions to be Made Pursuant to the Plan

Distributions to be made by the Disbursing Agent on account of any claim will be made

as promptly as practicable. Distributions to be made by the Disbursing Agent under the Plan will

be made by check drawn on a domestic bank or by wire transfer, at the sole election of the

Disbursing Agent.

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be

made to holders of allowed claims pursuant to the Plan may be delivered by regular mail,

---

[5] The Claims Bar Date was October 15, 2010.

1    postage prepaid, to the address shown in the schedules of liabilities filed by the Debtor with the

2    Court, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or,

3    if a different address is stated in a proof of claim duly filed with the Court, to such address.

4           Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not

5    negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of

6
     any check will be made to the Reorganized Debtor by the holder of the allowed claim to whom
7
     such check originally was issued, prior to the expiration of one hundred twenty (120) days from
8

9    the date of issuance of such check. After such date, the claim will be deemed disallowed and the

10   monies otherwise payable on account of such claim will revest in the Reorganized Debtor free

11   and clear of all claims and interests.

12          In connection with the Plan and any instruments issued in connection therewith, the

13   Reorganized Debtor shall comply with all applicable withholding and reporting requirements
14
     imposed by any federal, state or local taxing authority, and all distributions under the Plan will
15

16   be subject to any such withholding or reporting requirements.

17          **6.     Exculpations and Releases**

18          To the maximum extent permitted by law, none of the Debtor, the estate, nor any of their

19   employees, agents, representatives, or the professionals employed or retained by any of them,

20   whether or not by Court order (each, a "Released Person"), shall have or incur liability to any
21
     person or entity for an act taken or omission made in good faith in connection with or related to
22

23   the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other

24   agreement or document created in connection therewith, the solicitation of acceptances for or

25   confirmation of the Plan, or the consummation and implementation of the Plan and the

26   transactions contemplated therein.  Each Released Person shall in all respects be entitled to

27

28

1    reasonably rely on the advice of counsel with respect to its duties and responsibilities under the

2    Plan.

3        **7.    Injunctions**

4        The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin

5    the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit,

6
judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged
7
8    or terminated pursuant to the Plan.

9        Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all

10   entities that have held, currently hold or may hold a claim or other debt or liability that is

11   discharged or an interest or other right of an equity security holder that is terminated pursuant to

12
the terms of the Plan are permanently enjoined from taking any of the following actions against
13
14   the Debtor, the estate, or their property on account of any such discharged claims, debts or

15   liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in

16   any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in

17   any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien

18   or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against

19   any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action

20   in any manner, in any place that does not comply with or is inconsistent with the provisions of
21
22   the Plan.

23   **E.    Risk Factors**

24       The primary risk of implementing the Plan is that creditors will vote against the Plan. If

25   creditors reject the Plan, the case will likely be converted to one under Chapter 7. If the case is

26   converted, there will be significant delays and additional costs before creditors receive a

27   distribution of the funds currently available.

28

F.    **Other Provisions of the Plan**

1.    **Executory Contracts and Unexpired Leases**

a)    **Assumptions**

(i)    **Schedule of Assumed Agreements.**

On the Effective Date, Reorganized Debtor will assume the executory contracts

and unexpired leases identified in **Exhibit 3**.    Attached as **Exhibit 4** is a list of the

unexpired leases and executory contracts which the Debtor has rejected or will reject as

of the Effective Date.  The Confirmation Order, subject to the occurrence of the Effective

Date, will constitute a Court order approving the assumption and assignment, on the

Effective Date, of the executory contracts and unexpired leases identified in **Exhibit 3**.

(ii)    **Cure Payments.**

Not applicable as no unexpired leases or executory contracts are assumed under

the Plan.

(iii)    **Objections to Assumption or Proposed Cure Payments.**

Any person who is a party to an executory contract or unexpired lease that will be

assumed under the Plan and who either contends that there exists a default requiring cure

payments, or otherwise objects to the contemplated assumption <u>must</u> file with the Court

and serve upon the Debtor and the Debtor's counsel a written statement, together with

supporting declaration stating the basis for its objection and any supporting

documentation for such objection.  Such statement, declaration and documentation must

be filed and served not later than 10 days before the date of the Plan confirmation

hearing.  Any person who fails to timely file and serve such a statement and declaration

will be deemed to have waived any and all objections to both the proposed assumption

and the proposed cure amount in connection with such assumption.

The Disbursing Agent will not be required to make any payment of any proposed or allowed cure amounts until that date which is 30 days after entry of a final order resolving any objection or other dispute regarding: (a) the proposed cure amount under the executory contract or unexpired lease which the Debtor seeks to assume; (b) whether the Debtor or Reorganized Debtor has provided adequate assurance of future performance under such executory contract or unexpired lease; or (c) any other matter pertaining to a proposed assumption, the dispute and approving the assumption.

### b)    Rejections

To the extent that an executory contract or unexpired lease is not assumed, as specified in **Exhibit 4** on the Effective Date, all such executory contracts and unexpired leases shall be deemed rejected. The Confirmation Order, subject to the occurrence of the Effective Date, will constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### 2.    Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

24

b.    To determine the allowability, classification, or priority of claims and

interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest

with standing to bring such objection or proceeding;

c.    To determine the extent, validity and priority of any lien asserted against

property of the Debtor or property of the Debtor's estate;

d.    To construe and take any action to enforce the Plan, the Confirmation

Order, and any other order of the Court, issue such orders as may be necessary for the

implementation, execution, performance, and consummation of the Plan, the Confirmation

Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all

matters that may be pending before the Court in this case on or before the Effective Date with

respect to any person or entity related thereto;

e.    To determine (to the extent necessary) any and all applications for

allowance of compensation and reimbursement of expenses of professionals for the period on or

before the Effective Date;

f.    To determine any request for payment of administrative expenses;

g.    To determine all applications, motions, adversary proceedings, contested

matters, and any other litigated matters instituted during the pendency of this case whether

before, on, or after the Effective Date;

h.    To determine such other matters and for such other purposes as may be

provided in the Confirmation Order.

i.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to

remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan

so as to carry out its intent and purpose;

25

1m

j.      Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

k.      To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

l.      To enter a final decree closing this Case.

## G. Reservation of Claims and Causes of Action, Including Avoidance Actions

All causes of action of the Debtor and its estate are preserved by the Plan, and the Reorganized Debtor will have the full power and authority to file, prosecute, settle, adjust, retain, enforce or abandon any such cause of action as the representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, whether such causes of action were commenced by the Debtor prior to the Effective Date or by the Reorganized Debtor after the Effective Date. The Debtor has investigated its potential causes of action and does not believe that it has any causes of action that it would be cost effective to pursue. Accordingly, the Debtor does not intend to file any litigation. Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights or of any defenses the Debtor or the Reorganized Debtor may have with respect to any causes of action.

## H.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible

tax consequences is intended solely for the purpose of alerting readers about possible tax issues

the Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the

tax consequences contained below are the only tax consequences of the Plan because the Tax

Code embodies many complicated rules which make it difficult to state completely and

accurately all of the tax implications of any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or

material effect on its tax liability.  The Debtor makes no representations regarding the potential

tax consequences to creditors.

## V. CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor

CANNOT and DOES NOT represent that the discussion contained below is a complete summary

of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the

requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

liquidation, and whether the Plan is feasible.  These requirements are not the only requirements

for confirmation.

27

**A.    Who May Vote or Object**

**1.    Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

**2.    Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a)    What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE was **October 15, 2010** for non-governmental entities and October 15, 2010, for governmental entities. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

28

### b)    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Debtor believes that Class 1 is impaired and entitled to vote to accept or reject the Plan. Parties who dispute the Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

29

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for

the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

impaired class has accepted the Plan without counting the votes of any insiders within that class,

and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

confirmed by "cramdown" on non-accepting classes, as discussed below.  Cramdown is not

available in this case as there is only one class of creditors.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2)

in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted

in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least

two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to

accept the Plan.

### 7.    Treatment of Nonaccepting Classes

See Section 8 immediately following.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The Debtor has only one class of claims and therefore Section 1129(b) is inapplicable to

this Case.

## B.    Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation

analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and

that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Debtor therefore believes that unsecured creditors will undoubtedly receive more under the Plan than they would receive in a chapter 7 liquidation of the Debtor. Below is a demonstration that all creditors and interest holders will receive at least as much under the Plan as such creditor would receive under a chapter 7 liquidation:

**ASSETS VALUE AT LIQUIDATION VALUES:**

|     |     |    |              |
|-----|-----|----|--------------|
| a.  | Real Estate: | $ |              |
| b.  | Cash:        | $ | 125,000.00   |
| c.  | Intangibles: | $ |              |

**TOTAL ASSETS AT LIQUIDATION VALUES:**    **$    125,000.00**

**Less:**
Chapter 7 Trustee fees                                       $    10,000.00
**Less:**
Chapter 7 Administrative Expenses                            $    15,000.00
**Less:**
Chapter 11 Administrative Expenses                           $    185,650.00[6]
**Less:**
Priority Claims, Excluding Administrative Expense Claims $          0.00

**TOTAL COSTS:**    **$**

(1) Balance for unsecured claims:                  $          00.00
(2) Total amount of unsecured claims:              $    4,953,979.00
(3) Total amount of unsecured claims under Plan    $    2,263,179.00

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL**

---

6 Includes the Chapter 11 administrative claims of WS, the US Trustee, Manhattan and REB in the approximate amount of $160,000.00. Under the Plan, Manhattan and REB shall not assert their administrative claims.

**RECEIVE OR RETAIN UNDER THIS PLAN = 4.4%**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| Claims & Classes | Payout Percentage Under the Plan | Payout Percentage in Chapter 7 Liquidation |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | N/A | N/A |
| Class 1 – General Unsecured | 4.4% | 0% |
| Class 2 – All Equity Interests in Debtor | 0% | 0% |

**C.    Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the administrative claims and expenses which are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied as the Debtor has $149,761.81 on hand.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments. Since the Plan is a liquidating Plan, the Debtor will only be disbursing funds on hand and this standard is not applicable.

# VI.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

As this is a liquidating Plan, the Debtor will not receive a discharge under the Plan.

**B.    Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the

property of the estate in the Reorganized Debtor. In addition, on the Effective Date, all of the

claims against and/or interests in third parties that constitute property of the estate shall be

revested in the Reorganized Debtor.

**C.    Modification of Plan**

The Debtor may modify the Plan at any time before confirmation. However, the Court

may require a new disclosure statement and/or revoting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1)

the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed

modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within one hundred twenty (120) days of the entry of the order confirming the Plan, the

Debtor shall file a status report with the Court explaining what progress has been made toward

consummation of the confirmed Plan. The status report shall be served on the United States

Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice

after the Effective Date. Further status reports shall be filed every 120 days and served on the

same entities.

1

### E.    Quarterly Fees

2

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be

3

paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees

4

accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States

5

6

Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an

7

order of dismissal or conversion to chapter 7.  The Reorganized Debtor shall move the Court for

8

entry of a final decree immediately after making the final distributions under the Plan.

9

### F.    Post-Confirmation Conversion/Dismissal

10

A creditor or party in interest may bring a motion to convert or dismiss the Case under §

11

1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court

12

orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had

13

been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will

14

15

revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property,

16

but only to the extent that the Court did not previously authorize relief from stay during the Case.

17

The order confirming the Plan may also be revoked under very limited circumstances.

18

The Court may revoke the order if the order of confirmation was procured by fraud and if the

19

party in interest brings an adversary proceeding to revoke confirmation within 180 days after the

20

entry of the order of confirmation.

21

### G.    Final Decree

22

23

Once the estate has been fully administered as referred to in Rule 3022 of the Federal

24

Rules of Bankruptcy Procedure, the Debtor or other party as the Court shall designate in the

25

order confirming the Plan, shall file a motion with the Court to obtain a final decree to close the

26

Case.

27

28

**H.     Conclusion**

If the Plan is not confirmed, unsecured creditors will likely receive nothing in respect of their claims because the case will be converted to one under Chapter 7 and the Chapter 7 and Chapter 11 administrative claim and the additional costs of administration will consume the funds currently available and there are no other assets from which distributions to creditors can be made. Accordingly, the Debtor believes confirmation of the Plan is clearly in the best interests of creditors and recommends that creditors vote in favor of the Plan.

Dated: April 4, 2011                          RANCHO MALIBU, LLC

                                              _____
                                              By: Richard Weintraub, Manager

Presented By:

WEINTRAUB & SELTH, APC

By:_____
    Daniel J. Weintraub
    James R. Selth
    Attorneys for Chapter 11 Debtor
    and Plan Proponent

35

## DECLARATION OF RICHARD WEINTRAUB

I, Richard Weintraub, hereby declare:

1.       I am the manager of Rancho Malibu, LLC, the debtor and debtor-in-possession herein. Unless otherwise set forth herein, I have personal knowledge of the facts set forth herein and, if called to testify, I could and would competently testify thereto.

2.       I make this declaration in support of this disclosure statement ("Disclosure Statement") which describes the Debtor's Plan of Reorganization.

4.       To the best of my knowledge, information and belief, all of the information contained in this Disclosure Statement is truthful and accurate.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this __ day of April, 2011, in Los Angeles, California.

_____

RICHARD WEINTRAUB

36

| In re:  RANCHO MALIBU, LLC, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-18138-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  11766 Wilshire Blvd., Ste. 1170, Los Angeles, California 90025.  A true and correct copy of the foregoing document:  **DISCLOSURE STATEMENT DESCRIBING LIQUIDATING CHAPTER 11 PLAN OF REORGANIZATION OF RANCHO MALIBU, LLC will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:**

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On <u>April 4, 2011,</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
- Stuart I Koenig    Skoenig@cmkllp.com
- David M Poitras    dpoitras@jmbm.com
- S Margaux Ross    margaux.ross@usdoj.gov
- James R Selth    jim@wsrlaw.net, charles@wsrlaw.net
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

- United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
- Daniel J Weintraub    dan@wsrlaw.net, charles@wsrlaw.net;erika@wsrlaw.net

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>N/A</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>April 4, 2011,</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Delivery to Chambers of the Honorable Geraldine Mund, United States Bankruptcy Court, San Fernando Division

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 4, 2011 | Erika Hallrud | |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                F 9013-3.1