**Daniel J. Weintraub - Bar #132111**
**James R. Selth – Bar #123420**
**WEINTRAUB & SELTH, APC**
**11766 Wilshire Boulevard, Suite 1170**
**Los Angeles, CA 90025**
**Telephone: (310) 207-1494**
**Facsimile: (310) 442-0660**

Attorneys for Chapter 11 Debtor and Plan Proponent

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO DIVISION

| | |
|---|---|
| In re:<br><br>RANCHO MALIBU, LLC,<br><br>Debtor and Debtor in Possession. | Case No. 1:10-bk-18138-GM<br><br>Chapter 11 Case<br><br>**PLAN OF REORGANIZATION**<br><br>**Disclosure Statement Hearing:**<br>Date:　May 10, 2011<br>Time:　10:00 a.m.<br>Place:　Courtroom 303<br>　　　　21041 Burbank Blvd.<br>　　　　Woodland Hills, CA<br><br>**Plan Confirmation Hearing:**<br>Date:　To Be Set<br>Time:　To Be Set<br>Place:　Courtroom 303<br>　　　　21041 Burbank Blvd.<br>　　　　Woodland Hills, CA |

## TABLE OF CONTENTS

I.      INTRODUCTION..........................................................................  3

II.     PLAN SUMMARY.....................................................................  4

III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND
        INTERESTS UNDER THE PLAN............................................  5

IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES............17

V.     EFFECT OF CONFIRMATION OF PLAN...............................................18

# I. INTRODUCTION

Rancho Malibu, LLC, a California limited liability company, is the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case. On July 6, 2010 the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtor, the creditors and other parties in interest to propose a plan of reorganization. A plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Chapter 11 Plan of Reorganization. Sent to you with this Plan was the Disclosure Statement Describing Debtor's Chapter 11 Plan of Reorganization of Rancho Malibu, LLC, which was provided to help you understand the Plan. All defined terms shall have the meanings assigned to them in the Disclosure Statement.

The Effective Date of the Plan will be the first business day which is at least fifteen (15) days following the date of entry of the Bankruptcy Court order confirming the Plan, providing there has been no order entered staying the effectiveness of the Plan Confirmation Order. If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order. The Debtor, following the Effective Date, shall be referred to as the Reorganized Debtor.

///

///

///

///

///

///

3

## II.

## PLAN SUMMARY

This is a liquidating Plan. Under the Plan, the Debtor will distribute the $125,000.00[1] in cash proceeds which it received from the global settlement (the "RM Settlement"), reached with its former secured creditor, East West Bank ("EWB"), and approved by the Court by the Order entered on December 16, 2010 (**Docket No. 78**).    The Plan also provides that in exchange for the agreement of REB Malibu, LLC ("REB"), and Manhattan Partners, LLC ("Manhattan"), to not assert (a) administrative priority claims for the amounts advanced to fund the costs of administering the Debtor's Chapter 11 case, including without limitation attorneys' fees and costs of the Debtor's counsel, which totaled more than $160,000.00[2], or (b) general unsecured claims which total in excess of $2,600,000.00, the Debtor shall assign and transfer to REB and Manhattan Partners, LLC ("Manhattan"), the Debtor's two members, all of the Debtor's right, title and interest in, to and arising out of all assets of every kind relating directly or indirectly to the development or land use entitlements (if any) related to the Property formerly owned by the Debtor. The Property was foreclosed on by EWB in accordance with the terms of the RM Settlement.  As explained more fully herein, if the member claims are allowed and not waived, the Case will be administratively insolvent and the general unsecured creditors will not receive a distribution.

The Plan provides an extremely prompt and cost effective means for distributing the $125,000.00 settlement proceeds.   Under the Plan, creditors will receive their distributions within forty five (45) days following the Effective Date of the Plan ("Effective Date").   The alternative to the Plan is conversion of the case to Chapter 7.  Conversion will result in

---

[1] Debtor's counsel is also holding $24,761.81, which remains from a post-filing retainer paid by Debtor's members.
[2] Declarations of Richard Weintraub and Hushmand Sohaili evidencing the alleged administrative claims of REB and Manhattan shall be filed prior to the Plan confirmation hearing.

1    significant delay in the making the creditor distributions (perhaps a year or more) and increased

2    administrative fees (the Chapter 7 trustee's fee alone is approximately ($10,000.00, plus the fees

3    and expenses of the trustee's counsel and other professionals-estimated at $15,000.00), which

4    would diminish the return to unsecured creditors.  In addition, in a Chapter 7, the Debtor's

5    members would not waive their claims, which would likely completely eliminate distribution to

6

7    the unsecured creditors.

8

9                                                    **III.**

10                        **CLASSIFICATION AND TREATMENT OF**

11                        **CLAIMS AND INTERESTS UNDER THE PLAN**

12    **A.    What Creditors and Interest Holders Will Receive Under the Plan**

13           As required by the Bankruptcy Code, the Plan classifies claims and interests in various

14    classes according to their right to priority.  The Plan states whether each class of claims or

15    interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

16

17    **B.    Unclassified Claims**

18           Certain types of claims are not placed into voting classes; instead they are unclassified.

19    They are not considered impaired and they do not vote on the Plan because they are

20    automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such,

21    the Debtor has not placed the following claims in a class:

22

23           **1.    Administrative Expenses**

24           Administrative expenses are claims for costs or expenses of administering the Case that

25    are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all

26    administrative claims be paid on the Effective Date unless a particular claimant agrees to a

27    different treatment.

28

                                                    5

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their

treatment under the Plan:

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Weintraub & Selth, APC, Debtor's bankruptcy counsel ("WS") | $25,000.00 (estimated) | Paid in full from cash on hand upon the later of (a) the Plan's Effective Date, or (b) the entry of a Bankruptcy Court order allowing the fees. |
| Office of the U.S. Trustee Fees | $    650.00 (estimated) | Paid in full upon Effective Date. |
| REB Malibu, LLC | $80,000.00 | Such claim shall not be asserted under the Plan in consideration for the transfer of all right, title and interest in the Intangible Assigned Assets on the Effective Date to REB and Manhattan |
| Manhattan Partners, LLC | $80,000.00 | Satisfied in full by Debtor's transfer of all right, title and  interest in the Intangible Assigned Assets on the Effective REB and Manhattan |
| **TOTAL** | $185,650.00 (estimated) | |

<u>Court Approval of Fees Required</u>:

The Court must allow all fees listed in this chart before the fees can be paid, except for

fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources.

The professional in question must file and serve a properly noticed fee application, and the

Court must rule on the application. Only the amount of fees allowed by the Court will be

required to be paid under the Plan. As discussed in this Disclosure Statement, the Debtor will

have sufficient cash on hand on the Effective Date to satisfy the foregoing administrative

claims.

The chart above includes the administrative claims of REB Malibu, LLC and Manhattan

Partners, LLC, for reimbursement of their payments to administer this case ("Insider

Administrative Claims"). If the Plan is confirmed, the Insider Administrative Claims will be

released in exchange for the Debtor's interests, if any, in the Estate's Intangibles.

//

//

**2.    Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8).  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installments of cash over a period not exceeding five (5) years from the date of the order for relief.  <u>There are no priority tax claims anticipated in this Chapter 11 case.</u>

**C.    Classified Claims and Interests**

**1.    Class of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  <u>There are no secured claims in this Chapter 11 Case.</u>

**2.    Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  <u>The Debtor is not aware of any claims that would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.</u>

**3.    Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).    The following chart identifies the Plan's treatment of the classes containing <u>all</u> of the Debtor's general unsecured claims:

7

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Claims: All General Unsecured Claims<br><br>Amount of all claims Total unsecured claims equal approximately $4,816,427.02, however this figure includes the Released Insider Claims<br><br>Allowed Claims which will be paid under the Plan= $2,263,179.11 (reflects the higher of Schedule F undisputed claims and filed proofs of claim, less Released Insider Claims which are not paid provided the Plan is confirmed)<br><br>**Total: $2,263,179.11** | N | Y<br><br>Allowed claims in this class are entitled to vote on the Plan | On or before the 45th day following the Effective Date, the Debtor will distribute to allowed Class 1 claim holders, on a pro rata basis, all funds remaining after payment of administrative costs. The amount available for distribution is estimated to be approximately $100,000.00. |

The total of unsecured claims against the estate is $4,816,427.02. However, the Member general unsecured claims total approximately $2,553,248.00. As stated above, the Member unsecured claims will not be asserted in exchange for the Debtor's transfer to Manhattan and REB of Intangible Assigned Assets. The Debtor believes that such interests either run with the Property or are of negligible value and therefore believes such an exchange is in the best interests of the Debtor's remaining creditors.

**4.    Class of Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | All Equity Interests in Debtor --<br><br>REB Malibu, LLC | Y | N<br><br>(Interests in this class are | On the Effective Date, the Members' equity interests and all related rights and duties under the Debtor's Operating Agreement, as amended, |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| | ("REB") - 46%<br><br>Manhattan Partners, LLC ("Manhattan") -8%<br><br>Dimes, LLC ("Dimes") - 46% | | deemed to have rejected the Plan) | shall be terminated. |

**D.    Means of Effectuating the Plan**

**1.    Funding for the Plan and Post Confirmation Management**

The Plan will be funded by the existing cash on hand of $149,761.81, consisting of the remainder of WS' post-filing retainer plus the $125,000.00 of EWB settlement proceeds.  The Debtor will be managed following Plan confirmation by REB and Manhattan equally.  REB and Manhattan's right to manage post confirmation shall be for the sole purpose of winding down and dissolving the Debtor as appropriate or necessary in the sole and absolute discretion of REB and Manhattan, including pursuing any re-vested causes of action.

**2.    Disbursing Agent**

In the interest of eliminating expense to the estate, WS, the Debtor's counsel, shall serve as the Plan Disbursing Agent ("Disbursing Agent") under the Plan and make Plan disbursements pursuant to the calculations of the pro rata share for each general unsecured claimant made by Debtor's management.  The cost of this service is estimated to be $2,000.

**3.    Objections to Claims**

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims.  The Debtor has reviewed the filed claims and compared them to its records.  The Debtor does not intend to file any objections to claims.   Attached as **Exhibit 1** is a claims chart, which identifies

all of the Debtor's scheduled unsecured claims and proofs of claim which have been filed[3]

against the Debtor by these creditors[4]. As provided by Section 502(c) of the Bankruptcy Code,

the Court may estimate any contingent or unliquidated disputed claim for purposes of

confirmation of the Plan. The Court will retain jurisdiction over the Debtor, the Reorganized

Debtor and the Case to resolve such objections to claims following the confirmation of the Plan.

Nothing contained in the Plan will constitute a waiver or release by the Debtor of any

rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The

Disbursing Agent will withhold from property to be distributed under the Plan and will place in

reserve a sufficient amount of cash to be distributed on account of claims that are disputed and

have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any

particular class as if such claims were allowed in full.

### 4. Interest Pending Allowance of Claims

Except as specifically provided for in the Plan, in the order confirming the Plan, or in

some other order of the Court, interest will not accrue on claims and no holder of a claim will be

entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any

claim, nothing in the Plan or herein will be deemed to imply or create for the holders of any

Disputed Claims any entitlement to receive interest upon the allowed amount of any such

Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as

expressly stated in the treatment pursuant to the Plan.

---

[3] All filed claims are subject to objections by Debtor as set forth herein.
[4] The Claims Bar Date was October 15, 2010.

10

1

### 5.    Distributions to be Made Pursuant to the Plan

2

Distributions to be made by the Disbursing Agent on account of any claim will be made

3

as promptly as practicable.  Distributions to be made by the Disbursing Agent under the Plan will

4

be made by check drawn on a domestic bank or by wire transfer, at the sole election of the

5

Disbursing Agent.

6

7

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be

8

made to holders of allowed claims pursuant to the Plan may be delivered by regular mail,

9

postage prepaid, to the address shown in the schedules of liabilities filed by the Debtor with the

10

Court, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or,

11

if a different address is stated in a proof of claim duly filed with the Court, to such address.

12

Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not

13

14

negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of

15

any check will be made to the Reorganized Debtor by the holder of the allowed claim to whom

16

such check originally was issued, prior to the expiration of one hundred twenty (120) days from

17

the date of issuance of such check.  After such date, the claim will be deemed disallowed and the

18

monies otherwise payable on account of such claim will revest in the Reorganized Debtor free

19

and clear of all claims and interests.

20

In connection with the Plan and any instruments issued in connection therewith, the

21

Reorganized Debtor shall comply with all applicable withholding and reporting requirements

22

imposed by any federal, state or local taxing authority, and all distributions under the Plan will

23

be subject to any such withholding or reporting requirements.

24

25

### 6.    Exculpations and Releases

26

To the maximum extent permitted by law, none of the Debtor, the estate, nor any of their

27

employees, agents, representatives, or the professionals employed or retained by any of them,

28

11

1  whether or not by Court order (each, a "Released Person"), shall have or incur liability to any

2  person or entity for an act taken or omission made in good faith in connection with or related to

3  the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other

4  agreement or document created in connection therewith, the solicitation of acceptances for or

5  confirmation of the Plan, or the consummation and implementation of the Plan and the

6  transactions contemplated therein.  Each Released Person shall in all respects be entitled to

7  reasonably rely on the advice of counsel with respect to its duties and responsibilities under the

8  Plan.

9

10      **7.      Injunctions**

11      The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin

12  the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit,

13  judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged

14  or terminated pursuant to the Plan.

15

16      Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all

17  entities that have held, currently hold or may hold a claim or other debt or liability that is

18  discharged or an interest or other right of an equity security holder that is terminated pursuant to

19  the terms of the Plan are permanently enjoined from taking any of the following actions against

20  the Debtor, the estate, or their property on account of any such discharged claims, debts or

21  liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in

22  any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in

23  any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien

24  or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against

25  any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action

26

27

28

in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**E.    Risk Factors**

The primary risk of implementing the Plan is that creditors will vote against the Plan. If creditors reject the Plan, the case will likely be converted to one under Chapter 7. If the case is converted, there will be significant delays and additional costs before creditors receive a distribution of the funds currently available.

**F.    Other Provisions of the Plan**

    **1.    Executory Contracts and Unexpired Leases**

        **a)    Assumptions**

            **(1)    Schedule of Assumed Agreements.**

On the Effective Date, Reorganized Debtor will assume the executory contracts and unexpired leases identified in **Exhibit 2**.    Attached as **Exhibit 3** is a list of the unexpired leases and executory contracts which the Debtor has rejected or will reject as of the Effective Date. The Confirmation Order, subject to the occurrence of the Effective Date, will constitute a Court order approving the assumption and assignment, on the Effective Date, of the executory contracts and unexpired leases identified in **Exhibit 2**.

        b.    **(ii)    Cure Payments.**

        c.    Not applicable as no unexpired leases or executory contracts are assumed under the Plan.

        d.    **(iii)    Objections to Assumption or Proposed Cure Payments.**

Any person who is a party to an executory contract or unexpired lease that will be assumed under the Plan and who either contends that there exists a default requiring cure payments, or otherwise objects to the contemplated assumption <u>must</u> file with the Court and

13

1   serve upon the Debtor and the Debtor's counsel a written statement, together with supporting

2   declaration stating the basis for its objection and any supporting documentation for such

3   objection.  Such statement, declaration and documentation must be filed and served not later

4   than 10 days before the date of the Plan confirmation hearing.  Any person who fails to timely

5   file and serve such a statement and declaration will be deemed to have waived any and all

6   objections to both the proposed assumption and the proposed cure amount in connection with

7   such assumption.

8        The Disbursing Agent will not be required to make any payment of any proposed or

9   allowed cure amounts until that date which is 30 days after entry of a final order resolving any

10  objection or other dispute regarding: (a) the proposed cure amount under the executory contract

11  or unexpired lease which the Debtor seeks to assume; (b) whether the Debtor or Reorganized

12  Debtor has provided adequate assurance of future performance under such executory contract or

13  unexpired lease; or (c) any other matter pertaining to a proposed assumption, the dispute and

14  approving the assumption.

15

16            **b)      Rejections**

17       To the extent that an executory contract or unexpired lease is not assumed, as specified in

18  **Exhibit 3**, on the Effective Date, all such executory contracts and unexpired leases shall be

19  deemed rejected.  The Confirmation Order, subject to the occurrence of the Effective Date, will

20  constitute an Order approving the Debtor's rejection of all such executory contracts and

21  unexpired leases.

22

23       THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

24  ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED

25  LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER.

26  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the

27  proof of claim is not timely filed, unless the Court orders otherwise.

28

14

1      **2.    Retention of Jurisdiction**

2          After confirmation of the Plan and occurrence of the Effective Date, in addition to

3    jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally

4    permissible including for the following purposes:

5          a.      To resolve any and all disputes regarding the operation and interpretation of

6
     the Plan and the Confirmation Order;
7

8          b.      To determine the allowability, classification, or priority of claims and

9    interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest

10   with standing to bring such objection or proceeding;

11         c.      To determine the extent, validity and priority of any lien asserted against

12   property of the Debtor or property of the Debtor's estate;

13
           d.      To construe and take any action to enforce the Plan, the Confirmation
14

15   Order, and any other order of the Court, issue such orders as may be necessary for the

16   implementation, execution, performance, and consummation of the Plan, the Confirmation

17   Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all

18   matters that may be pending before the Court in this case on or before the Effective Date with

19   respect to any person or entity related thereto;

20         e.      To determine (to the extent necessary) any and all applications for

21
     allowance of compensation and reimbursement of expenses of professionals for the period on or
22

23   before the Effective Date;

24         f.      To determine any request for payment of administrative expenses;

25         g.      To determine all applications, motions, adversary proceedings, contested

26   matters, and any other litigated matters instituted during the pendency of this case whether

27   before, on, or after the Effective Date;

28

1    h.    To determine such other matters and for such other purposes as may be

2    provided in the Confirmation Order.

3    i.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to

4    remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan

5    so as to carry out its intent and purpose;

6

7    j.    Except as otherwise provided in the Plan or the Confirmation Order, to

8    issue injunctions to take such other actions or make such other orders as may be necessary or

9    appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or

10    implementation by any person or entity of the Plan or the Confirmation Order;

11    k.    To issue such orders in aid of consummation of the Plan or the

12    Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect

13    to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy

14    Rules; and

15

16    l.    To enter a final decree closing this Case.

17    **G. Reservation of Claims and Causes of Action, Including Avoidance Actions**

18    All causes of action of the Debtor and its estate are preserved by the Plan, and the

19    Reorganized Debtor will have the full power and authority to file, prosecute, settle, adjust, retain,

20    enforce or abandon any such cause of action as the representative of the Debtor's estate under

21    section 1123(b) of the Bankruptcy Code or otherwise, whether such causes of action were

22    commenced by the Debtor prior to the Effective Date or by the Reorganized Debtor after the

23    Effective Date. The Debtor has investigated its potential causes of action and does not believe

24    that it has any causes of action that it would be cost effective to pursue. Accordingly, the Debtor

25    does not intend to file any litigation. Nothing contained in the Plan shall constitute a waiver or

26    release by the Debtor or the Reorganized Debtor of any rights or of any defenses the Debtor or

27    the Reorganized Debtor may have with respect to any causes of action.

28

1

### IV.    TAX CONSEQUENCES OF PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible

tax consequences is intended solely for the purpose of alerting readers about possible tax issues

the Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the

tax consequences contained below are the only tax consequences of the Plan because the Tax

Code embodies many complicated rules which make it difficult to state completely and

accurately all of the tax implications of any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or

material effect on its tax liability.  The Debtor makes no representations regarding the potential

tax consequences to creditors.

### V.  EFFECT OF CONFIRMATION OF PLAN

**A.**    **Discharge**

As this is a liquidating Plan, the Debtor will not receive a discharge under the Plan.

**B.**    **Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the

property of the estate in the Reorganized Debtor.  In addition, on the Effective Date, all of the

claims against and/or interests in third parties that constitute property of the estate shall be

revested in the Reorganized Debtor.

**C.**    **Modification of Plan**

The Debtor may modify the Plan at any time before confirmation.  However, the Court

may require a new disclosure statement and/or revoting on the Plan.

17

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report**

Within one hundred twenty (120) days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice after the Effective Date. Further status reports shall be filed every 120 days and served on the same entities.

**E.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7. The Reorganized Debtor shall move the Court for entry of a final decree immediately after making the final distributions under the Plan.

**F.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan. If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that the Court did not previously authorize relief from stay during the Case.

1         The order confirming the Plan may also be revoked under very limited circumstances.

2    The Court may revoke the order if the order of confirmation was procured by fraud and if the

3    party in interest brings an adversary proceeding to revoke confirmation within 180 days after the

4    entry of the order of confirmation.

5    **G.    Final Decree**

6

7         Once the estate has been fully administered as referred to in Rule 3022 of the Federal

8    Rules of Bankruptcy Procedure, the Debtor or other party as the Court shall designate in the

9    order confirming the Plan, shall file a motion with the Court to obtain a final decree to close the

10    Case.

11    //

12    //

13    //

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28

**H.    Conclusion**

If the Plan is not confirmed, unsecured creditors will likely receive nothing in respect of their claims because the case will be converted to one under Chapter 7 and the Chapter 7 and Chapter 11 administrative claim and the additional costs of administration will consume the funds currently available and there are no other assets from which distributions to creditors can be made.  Accordingly, the Debtor believes confirmation of the Plan is clearly in the best interests of creditors and recommends that creditors vote in favor of the Plan.

Dated: April 4, 2011                                    RANCHO MALIBU, LLC

                                                        _____
                                                        By: Richard Weintraub, Manager

Presented By:

WEINTRAUB & SELTH, APC


By: _____
    Daniel J. Weintraub
    James R. Selth
    Attorneys for Chapter 11 Debtor
    and Plan Proponent

20

# EXHIBIT 1

| Name | Amount Scheduled by Debtor | Amount per Creditor Proof of Claim | Allowed Amount |
|---|---|---|---|
| Akin Gump, LLp | $158,992.80 | None | $158,992.80 |
| AMEC Geomatrix, Inc. | $31,100.71 | None | $31,100.71 |
| Biosolutions, Inc. | $650.00 | None | $650.00 |
| Freedman & Taitelman, LLP | $4,536.90 | $22,651.94 | $22,651.94 |
| Gaines & Stacey, LLP | $70,099.38 | None | $70,099.38 |
| Greenworks Studio | $28,550.78 | None | $28,550.78 |
| James Hyatt Studio | $160,782.93 | None | $160,782.93 |
| Lang Lighting Design, Inc. | $10,379.94 | $10,137.94 | $10,137.94 |
| Law offices of Asha Dhillon | $3,374.50 | None | $3,374.50 |
| Manhattan Partners, LLC | $437,500.00 | None | $437,500.00 |
| Matt Construction Corporation | $62,894.50 | $62,894.58 | $62,894.58 |
| Natural Resources Spa Consulting | $8,290.80 | None | $8,290.80 |
| Parkitects | $130,303.32 | $130,303.32 | $130,303.32 |
| Paul, Hasting, Janofsky, LLP | $5,660.00 | None | $5,660.00 |
| PCR Service Corportation | $8,028.34 | None | $8,028.34 |
| REB Malibu, Inc. | $1,796,298.79 | None | $1,796,298.79 |
| Richard & Diane Weintraub | $3,666.73 | None | $3,666.73 |
| Richard H. Penner | $4,000.00 | None | $4,000.00 |
| STO Design Group, Inc. | $43,440.00 | None | $43,440.00 |
| The Marshall Associates | $3,900.00 | None | $3,900.00 |
| Weber & Baer | Unknown | $5,927.42 | $5,927.42 |
| Weintraub Financial Services | $315,782.52 | None | $315,782.52 |

| Name | Amount Scheduled by Debtor | Amount per Creditor Proof of Claim | Allowed Amount |
|---|---|---|---|
| Valleycrest Landscape Development | Unknown | $255,108.90 | $255,108.90 |
| Internal Revenue Service | Unknown | $200.00 | $200.00 |
| Mr. David Maffit Weintraub Financial Services, Inc. | Unknown | $4,000.00 | $4,000.00 |
| BAMO, Inc. | $297,123.39 | $297,123.39 | $297,123.39 |
| C.P. O'Halloran | $36,800.00 | $38,793.33 | $38,793.33 |
| Ensitu Engineering | $12,723.00 | None | $12,723.00 |
| HKS Architects, Inc. | $454,124.48 | $489,124.00 | $489,124.00 |
| Psomas | $332,854.27 | $332,854.27 | $332,854.27 |
| Rowley International, Inc. | $14,725.00 | $19,657.95 | $19,657.95 |
| Van Beveren & Butelo, Inc. | $43,178.70 | None | $43,178.70 |
| Veneklasen Associates | $11,630.00 | None | $11,630.00 |
| *TOTAL:* | *$4,491,391.78* | *$1,668,777.04* | *$4,816,427.02* |
| | Total of Scheduled Amount + Proof of Claim | *$4,816,427.02* | |
| | Less Claims released by: Manhattan Partners, LLC REB Malibu, Inc. Richard & Diane Weintraub Weintraub Financial Development | $2,263,179.11 | |

# EXHIBIT 2

# Executory Contracts and Unexpired Leases
# to be Assumed by Debtor on Effective Date:

None

# EXHIBIT 3

## List of Rejected Executory Contracts

1.  Contract with AMEC Geomatrix, Inc.

2.  Contract with BAMO, Inc.

3.  Contract with Enitsu Engineering

4.  Contract with HKS Architects

5.  Contract with HRP Studio

6.  Contract with James Hyatt Studio

7.  Contract with Lang Lighting Design, Inc.

8.  Contract with The Marshall Associates

9.  Contract with Matt Construction Corp.

10. Contract with ME NollKamper

11. Contract with Natural Resources

12. Contract with Parkitects

13. Contract with PCR Services

14. Contract with Psomas

15. Contract with Rowley International, Inc.

16. Contract with STO Designe Group, Inc.

17. Contract with Ultimate Communications

18. Contract with Van Beveren & Butelo, Inc.

| In re: RANCHO MALIBU, LLC, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-18138-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. **My business address is: 11766 Wilshire Blvd., Ste. 1170, Los Angeles, California 90025. A true and correct copy of the foregoing document: PLAN OF REORGANIZATION will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:**

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 4, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
- Stuart I Koenig    Skoenig@cmkllp.com
- David M Poitras    dpoitras@jmbm.com
- S Margaux Ross    margaux.ross@usdoj.gov
- James R Selth    jim@wsrlaw.net, charles@wsrlaw.net
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

- United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
- Daniel J Weintraub    dan@wsrlaw.net, charles@wsrlaw.net;erika@wsrlaw.net

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On N/A I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 4, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Delivery to Chambers of the Honorable Geraldine Mund, United States Bankruptcy Court, San Fernando Division

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 4, 2011 | Erika Hallrud | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 9013-3.1